Giessel and wife, Appellants, vs. Columbia County and another, Respondents.

*February 27—April 8, 1947.*

For the appellants there was a brief by *Walker & Latton* of Portage, and oral argument by *Dorothy Walker*.

For the respondents there was a brief by *O'Keefe & Miller* of Portage, attorneys, and *McCue, Regan & McCue* of Milwaukee of counsel, and oral argument by *Arno J. Miller*.

WICKHEM, J.   The accident occurred on October 11, 1945, and resulted in the death of Harold Giessel, fifteen years old, who was the son of plaintiffs.   At about 6:30 on the night in question, Fred Graack, a truck driver for Columbia county, drove a county-owned truck loaded with wood to the Haynes home in Portage.   On reaching the vicinity of the Haynes home he backed the truck west in an alley to a point nearly opposite the Haynes home.   This put him in the vicinity of the center of the block which was unoccupied and the alleys of the block were often used by children as a place to play.   It was dark and all of the truck lights were on.   Graack went to the Haynes home and then was directed to turn around and to come into the alley head on.   He then returned to the truck, intending so to maneuver his car as to come into the alley in accordance with these directions.   At the time the truck was stopped some eight or ten children between seven and fifteen years of age were playing to the north of the truck.   They ran toward the truck as it stopped and some of them followed

Graack to the Haynes home. Graack and Haynes returned to the vehicle, Haynes walking somewhat behind Graack. Some of the children returned to the truck with Graack, or a little before, and climbed onto the fenders. Graack ordered them off. Decedent was some twenty feet behind the driver as he approached the truck and could be said to have accompanied Haynes who, because of the responsibility he felt toward the children, remained at the rear of the truck. Graack walked along the left side of the truck to the front and after ordering the children off the truck started up the motor in about sixty seconds. As the other children got off the truck decedent said, "Get out of the way, I'm going to hop on the truck," and ran to the right front running board. He was not visible to the driver of the truck because of the load and the design of the truck cab. The evidence was in conflict as to whether decedent boarded the truck after the motor was started or whether he reached the running board just before the motor started. The latter evidence is to the effect that counting four or five in fairly rapid order would represent the time which elapsed after decedent reached the running board and before the motor started. When the truck started decedent was thrown or fell off the truck and sustained a broken neck which resulted in his death within a short time. Graack did not know that decedent was on the truck until after the accident and did not know that he had fallen until his attention was called to the accident by Haynes.

Plaintiffs concede that there was a jury question but claim that errors in instruction and in other respects prejudiced plaintiffs and require a new trial. We are of the opinion that there was no evidence in the record of causal negligence on the part of the driver and that, assuming that there was, the negligence of decedent constituted more than fifty per cent of the negligence involved in the case. It will be convenient to set forth our conclusions in connection with the questions submitted to the jury.

The jury exonerated Graack from negligence in respect of, (1) lookout; (2) taking precautions to determine the presence of decedent on the truck; (3) as to the manner in which he started the truck; (4) as to management and control. Graack was found negligent as to giving warning of his intention to move the truck. It is quite obvious that there is no evidence of negligence as to the manner of starting the truck and as to management and control of it. The truck was started in an orderly manner and there is no claim that its course was negligent or that there was any reason for the driver to stop it sooner than he did. There is no evidence of negligence as to lookout in the ordinary sense since there were no children off the truck who were in any position of peril. Hence, the question is whether Graack was negligent in failing to discover the presence of decedent on the truck and whether he was negligent in giving notice of his warning to move the truck. There is evidence that the driver made no inspection along the right side of the truck before he entered it. Whether this satisfied the requisites of due care on his part or not need not be discussed because an inspection of the right side of the truck would not have disclosed decedent in a position of peril. It is equally clear that no procedure on the part of the driver would have disclosed to him the presence of decedent on the truck immediately before he started the motor. Decedent waited until a few seconds before the truck started and then dashed to the right side of the truck where he was not visible to the driver. He reached the truck either a second or two before or a second or two after the truck was started. It appears to us to make no great difference whether he actually arrived a second or so before the truck was started or a second or so later. The point is that the truck driver could have made an indefinite number of inspections of the truck without saving decedent from his fate or discovering decedent's presence on the truck because he had ultimately to climb into the truck where decedent was out of his view and decedent was obviously

making a last-minute determination to ride the truck. The same comment goes to the one respect in which the jury found the driver to be negligent, and that was in giving an adequate warning of his intention to start the truck. There is no evidence of negligence in this respect and, if there was, such negligence could not be the cause of the accident.

The evidence raises some question whether the driver's warning to the children who were on the truck was heard by decedent, but on the whole record it is apparent that all the children knew that this truck was about to be started and that the driver was in the cab for this purpose. It is equally obvious that decedent knew this and that when he ran to mount the running board and asked the children to get out of his way he anticipated the immediate starting of the truck. The driver had made sure that those children who were on the truck or who might be in a position to dash in front of it were in a position of safety. Decedent was not a small child but a boy nearly sixteen years of age and was in a position of perfect safety. His determination after the driver was in the cab to dash to the blind side of the truck an instant before it was started indicates as plainly as anything can that he knew the truck was about to start and about to start at once. Hence, it appears to us that decedent was not misled by failure to hear the driver's direction to the other children.

There is some evidence that decedent was nearer the truck than twenty feet and it is claimed that this evidence avoids the line of reasoning by which we have determined that there is no jury issue. However, the witness who testified that Harold stood on the right side of the truck for some time before it started heard the truck driver's order to the other children to get off the truck, and if decedent stood next to him it was a sufficient warning to him that he had no permission to ride and that he was prohibited from doing so. It is claimed that since Haynes and one of the boys in the vicinity did not hear the boys ordered off the truck, it must be assumed in accord-

ance with the presumption of due care applicable to deceased persons that decedent did not hear it. This might bear on contributory negligence but it certainly did not establish the inadequacy of the warning.

So far as the driver's intention immediately to start the truck is concerned, that was so obvious from all the facts in the case that nobody could deny his anticipation of an immediate movement and decedent's action conclusively shows that he did anticipate such a movement. The case appears to us to be in accordance with the decision of this court in *Routt v. Look,* 180 Wis. 1, 191 N. W. 557. Plaintiffs seek to distinguish this case on the basis of a statement there (p. 12) that "This case must also be distinguished from cases where children had clustered about a truck which has stopped in a street. It is conceded here that at the time the driver started the truck all of the children were in a place of safety, one on the seat beside him and three standing near the telephone post some twenty or thirty feet away." Here at the time when the driver started the truck, or at least when he got into the cab, all of the children were in a place of safety and indeed none of them were in a position to be hurt by the forward operation of the truck. There was in this case no permission to any child to ride on the truck. In the presence of decedent all children who had climbed onto the truck were ordered off. There was no invitation that could have been misleading to decedent. We are of the view that there was as a matter of law no negligence on the part of the driver.

Even if there could be spelled out from the record a scintilla of causal negligence on the part of the driver it could not possibly be greater than that attributable to decedent. This determination makes it unnecessary to consider or discuss the various errors claimed by plaintiffs in respect of instructions to the jury.

*By the Court.*—Judgment affirmed.