SHIPLEY, Respondent, vs. KRUEGER and another, Appellants.

*November 5—December 1, 1953.*

For the appellants there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *John F. O'Melia.*

For the respondent there was a brief by *Meyer & Meyer* of Marion, and *Benton, Bosser, Becker & Fulton* of Appleton, and oral argument by *B. E. Meyer* and *David L. Fulton.*

MARTIN, J. The first question submitted by appellants is whether the respondent, by placing herself in a position of known danger, was guilty of at least 50 per cent of all the causal negligence.

Respondent's position on the ramp is in dispute, as set out above. If she stood where Krueger testified, she was about four and one-half feet from the car as he made his previous attempts to get it up the ramp. If she stood where she testified, on the east edge of the ramp, she was 10 feet away, the ramp being more than 21 feet wide.

As to respondent's knowledge of the facts surrounding the scene of the accident, there is nothing in the record to indicate that the portion of the ramp upon which she stood was dangerously slippery. The only evidence is that it had snowed or sleeted at some time during their stay at the tavern. Although it is undisputed that she stood on that part of the ramp which had not been shoveled and upon which there was an accumulation of snow and ice, she had no difficulty in walking up the ramp or in standing there prior to the last time Krueger attempted to get his car into the garage. When she saw him cutting the turn shorter and coming too close to where she stood, "evidently I took a step backwards and I don't know whether I slipped and the car rolled over me or whether he hit me." It is also undisputed that up to that time she had not moved from her initial position; but appellants' contention is that as Krueger came toward the ramp on the last attempt respondent slipped and fell into the path of the car.

As to respondent's knowledge of Krueger's intentions, we cannot agree with appellants' contentions. There is no question but that she knew of the rutty condition of the alley and was fully aware of the difficulty Krueger was experiencing in getting his car into the garage; neither is there any question but that the visibility was good and she could and did watch him in all of his attempts. What she could not know was that on the last attempt he would turn much more sharply and invade the east portion of the ramp. Prior to that time he had turned into the west half which led to the garage. Krueger did not blow his horn or talk to her

or warn her in any way that he intended to turn sooner than he had previously done.

Under these circumstances the questions of negligence, proximate cause, and the amount of negligence attributable to each of the parties were for the jury. No doubt the jury felt that respondent could have taken a safer position and in not doing so was 25 per cent responsible for her injuries. But the position she did take was not so obviously dangerous as to make her as negligent, as a matter of law, as Krueger.

In *Williams v. Monroe County* (1953), ante, p. 10, 60 N. W. (2d) 358, where the deceased took a position nine feet from the place where he could reasonably expect the truck driver to stop, we held that his position was not such an obvious place of danger as to warrant a directed verdict on the ground that as a matter of law he was guilty of at least 50 per cent of the negligence.

In all the cases cited 'by appellants it was held that the plaintiff had knowledge or notice of the defendant's conduct and reason to apprehend the danger in which he placed himself. For instance, in *Wedecky v. Grimes* (1938), 229 Wis. 448, 282 N. W. 593, where plaintiff was assisting defendant in getting a truckload of logs over an icy hill, he took a position at the side of the road where he should have known he would be struck by the logs which extended over the side of the truck. In *Lepak v. Farmers Mut. Automobile Ins. Co.* (1952), 262 Wis. 1, 53 N. W. (2d) 710, plaintiff knew of the operation of the particular truck involved and was guilty of negligence for his own safety in alighting from the vehicle while such operation was taking place. In *Gvora v. Carlson* (1949), 255 Wis. 118, 37 N. W. (2d) 848, where plaintiff, in helping to get a truck across a railroad track, knew that on two previous attempts the truck slid closer to a railroad car, it was held that he had knowledge that his position between the truck and the railroad car was dangerous and that he deliberately placed himself

in that position. These cases, and the others cited, are all distinguishable from the instant case. Here the respondent had observed Krueger in several attempts to get up the ramp and her position was not dangerous on those occasions. His intention to make a short turn on the last attempt was not made known to her until it was too late for her to avoid being struck. She had no reason to anticipate that his operation of the car on that attempt would be any more dangerous to her than on his previous attempts.

Appellants' second question on this appeal is whether respondent assumed the risk attendant upon her leaving Krueger's vehicle. They contend that the elements of assumption of risk exist in this case, although it is conceded that it was not tried on that theory. The record shows that when the trial court prepared the special verdict, containing no questions upon assumption of risk, it was submitted to counsel for consideration and appellants made no objection to its submission to the jury in that form. They are therefore precluded from raising the question now. *Nimits v. Motor Transport Co.* (1948), 253 Wis. 362, 34 N. W. (2d) 116; *Johnson v. Sipe* (1953), 263 Wis. 191, 56 N. W. (2d) 852.

*By the Court.*—Judgment affirmed.