RHINELANDER PAPER COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION OF WISCONSIN, imp., Respondent.

*November 10—December 8, 1931.*

For the appellants there was a brief by *Grady, Farnsworth & Walker* of Portage, and oral argument by *W. H. Farnsworth.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan* and *Herbert H. Naujoks,* assistant attorneys general, and oral argument by *Mr. Naujoks.*

Rosenberry, C. J.  The facts are not in dispute and as stated by the Industrial Commission are as follows:

"There is no dispute but what this applicant was a regular employee of the Rhinelander Paper Company and had been such for the past four years.  At the time of and for some few days preceding the injury the American Engineering Company were making some replacements in the boilers of the Rhinelander Paper Company, under contract and with the American Engineering Company, having from twelve to fifteen of their own employees on the premises of the Rhinelander Paper Company in doing this work.  The chief engineer of the Rhinelander Paper Company, Mr. Suhs, had given instructions to some of his subordinates and employees, including the applicant, to render such assistance as was possible to the employees of the American Engineering Company to insure a prompt completion of this work.  The applicant and other employees of the Rhinelander Paper Company did render assistance to the employees of the American Engineering Company, and at the completion of the work the Rhinelander Paper Company billed the American Engineering Company for such services.  At all times, however, the regular employees of the Rhinelander Paper Company were paid and supervised by foremen and executives of the Rhine-

lander Paper Company. On the day in question the applicant was assisting an employee of the American Engineering Company for a few minutes in connection with ascertaining the difficulty in starting an air motor. While doing this work one of the bristles of the wire brush on the end of the shaft flew off, striking the applicant in the eye, resulting in his injury."

Upon these facts the commission held that the plaintiff was an employee of the Rhinelander Paper Company and entitled to compensation accordingly. It is the earnest contention of the plaintiffs that under the doctrine of *Spodick v. Nash Motors Co.* 203 Wis. 211, 232 N. W. 870, the claimant was a loaned employee and for the time being in the employment of the American Engineering Company, an independent contractor.

We shall not attempt to reconcile the decisions of this and other courts in this field. They are, to some extent at least, irreconcilable. It is quite generally agreed that in order to transfer liability from the general employer to the one to whom the employee is loaned, there must be some consensual relationship between the loaned employee and the employer whose service he enters, sufficient to create a new employer-employee relationship. Where an employee enters the service of another at the command and pursuant to the direction of the master, no new relationship is created. While the employee may be subject to the direction of the temporary master, he is there in obedience to the command of his employer, and in doing what the new master directs him to do he is performing his duty to the employer who gave the order. Whether or not there is in a particular case such a change of relationship is often a matter of great difficulty and as to which reasonable minds may come to different conclusions. In this case the employment was temporary. It is clear that the claimant was performing services in obedience to the direction of the master and that there was no consent

on his part, express or implied, sufficient to make him the employee of the American Engineering Company. Consent cannot be inferred merely from the fact that the employee obeyed the commands of his master in entering the services of another. It was held in the *Spodick Case* as well as in *Seaman Body Corp. v. Industrial Comm.* 204 Wis. 157, 235 N. W. 433, that there was such a consent.

*By the Court.*—Judgment affirmed.